# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Ryan P. McKone, being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge and belief:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since March 2015. Prior to being employed by ATF, I was employed as a police agent with the City of Lakewood Police Department for 10 years. I was a patrol officer for 4 years and a detective assigned to the Major Crimes Unit for 6 years. I am a graduate of the Federal Law Enforcement Training Center, and the ATF National Academy in Glynco, Georgia. My primary duties involve the investigation of Federal firearm violations and their associated use in violent crime and narcotics violations. I am currently assigned by ATF to the Denver IV Field Office on special assignment to the Denver Police Department Homicide Unit, where I work jointly with sworn law enforcement officers of state and local agencies throughout the District of Colorado. During my law enforcement career, I have authored several search warrants and arrest warrants, production of records requests, and requested court orders for all matters of evidence, including but not limited to, real property, vehicles, persons, electronic information, website information, cellular phone information, vehicle tracks, and biological evidence.

2. As an ATF Special Agent, I am familiar with federal criminal laws pertaining to firearms, explosives, violent crime, and narcotics violations. I know that it is a violation of Title 18, U.S.C., § 2261A(1)(A)(i)and (1)(B) to travel interstate with the intention to harass, threaten, injure, intimidate, or kill an intimate partner.

3. I assert that there is probable cause to believe that Dustin Lee LEEVER has violated Title 18, U.S.C., § § 2261A(1)(A)(i) and (1)(B) to travel interstate with the intention to harass, threaten, injure, intimidate, or kill an intimate partner and by such travel, place an intimate partner in reasonable fear of death or serious bodily injury and cause, attempt to cause, or would be reasonable expected to cause substantial emotional distress to that person.

4. The statements set forth in this affidavit are based upon my training and experience, consultation with other experienced investigators, agents, and other sources of information related to this and other firearms and narcotics investigations. This affidavit is intended to set forth probable cause in support of the criminal complaint and arrest warrant and does not purport to set forth all of my knowledge regarding this investigation.

## INVESTIGATION

5. Based upon my work in a current investigation, I am familiar with Dustin Lee LEEVER.

6. On February 19, 2021, your affiant became involved with the investigation of a possible violation of Title 18 § 2261A(1)(A)(i) and (1)(B) to travel interstate with the intention to harass, threaten, injure, intimidate, or kill an intimate partner, which is the United States federal "interstate stalking" statute. Your affiant learned from Denver Police Department Domestic Violence Unit Detective B Baker that SV has been in an approximately 3-year intimate relationship with Dustin L LEEVER. SV ended their relationship in August 2020, due to physical and emotional abuse by LEEVER. SV told LEEVER that she was moving back to Kansas to stay with her father. However, SV was actually moving to Austin, TX. SV told LEEVER she was moving to Kansas because she was afraid LEEVER would track her down and hurt her. LEEVER reportedly had physically assaulted and threatened to kill SV approximately twenty (20) times during their relationship.

7. In August, LEEVER reportedly drove to SVs father's home looking for her. LEEVER found out that she in fact was not there and he returned to Denver. LEEVER was later able to ascertain that SV was hiding in Austin, TX. LEEVER began to call and text SV repeatedly and continued to do so. Your affiant viewed the call logs from SV's phone and observed multiple calls and text messages from LEEVER telling SV to answer his calls and to talk to him.

8. On February 12, 2021, LEEVER's mother, KP, called the Denver Police Department asking for a welfare check on LEEVER. LEEVER video called KP and told KP he was upset over his breakup with SV and he was going to kill himself. KP reported that LEEVER had a revolver pointed to his head. Det. Baker told your affiant that KP reported LEEVER told her he was going to drive to Austin, Texas and kill his ex-girlfriend SV. KP called SV and told her that LEEVER was driving to her house to kill her. Other associates of LEEVER also called the police reporting that LEEVER was suicidal. One person, KF, called her local law enforcement agency and reported that LEEVER had called her and stated he had shot someone in the face.

9. On February 15, 2021, Denver Police Detective B Baker spoke with SV via telephone. SV reported that LEEVER was having a mental breakdown due to their breakup and the recent death of his father. SV said she was staying with a friend in Austin, Texas to get away from LEEVER. LEEVER discovered the address where SV was staying and threatened to come to Austin, Texas to kill SV and everyone else who happened to be in the residence. SV stated that LEEVER had two handguns, one described as a .357 revolver, which holds five rounds

of ammunition, and the other described as a .45 caliber pistol, which holds twelve rounds of ammunition.

10. Det. Baker was able to obtain an audio recording of a phone call between LEEVER and KP, recorded on February 12, 2021 at 11:56am. KP identified the male voice on the call as LEEVER. In the recording, LEEVER threatened to kill SV and said he had a gun to his mouth. LEEVER made several suicidal comments regarding shooting himself and believed SV had cheated on him. LEEVER admitted to KP to be in possession of two pistols. LEEVER threatened to drive to Austin, Texas and kill SV. LEEVER asked to speak with SV. LEEVER said he was coming down to Austin right now and said he if was stopped by the police, he was going to kill himself. LEEVER stated he had twenty-eight (28) rounds of ammunition "plus five." LEEVER also threatened to kill KP during the phone call.

11. On February 16, 2021, LEEVER again called KP and threatened to go the Shotgun Willie's strip club, located at 490 S Colorado Blvd, Glendale, CO, which is known to be in the Federal District of Colorado, and kill everyone inside of the club in a mass shooting. LEEVER believed that SV had met someone at Shotgun Willie's, which was SV's former place of employment.

12. During the course of his investigation, Det. Baker was told by SV, KP and another person identified as KF that LEEVER had attempted to drive from Denver to Austin, TX to kill SV. LEEVER reportedly had gotten as far as Albuquerque, New Mexico, which is known to be in the Federal District of New Mexico. Det. Baker was told this had occurred on February 12, 2021.

13. Your affiant reviewed cellphone data records for LEEVER's cellular device. LEEVER's cellular records show him to be in New Mexico near Glorieta Pass on I-25 on February 12, 2021 at approximately 1901 hours. LEEVER called KP during this time frame. When a cellular device initiates a call, it will connect with the closest cellular tower. It is highly unlikely that LEEVER's cellular device was anywhere other than in close proximity to this cellular tower.



14. On March 8, 2021, your affiant spoke with SV. SV told your affiant that she believed LEEVER owns or owned two different handguns. SV stated she was surprised to learn that he owned firearms because of his prior convictions for domestic violence. SV told your affiant she was and is currently afraid that LEEVER will kill her. SV stated she received so many calls and text messages from LEEVER that she blocked him from contacting her. LEEVER then began to contact her using his father's account information.

15. On March 9, 2021, your affiant and DPD Det. Baker met with DC, who is known to be a close friend of LEEVER. DC told your affiant that they have known LEEVER for more than 15 years. DC related that on February 12, 2021, LEEVER came over to his residence and told him he was going to go find SV in Texas. DC told LEEVER not to go to Texas but LEEVER did not listen to DC and decided to drive to Austin, TX anyway. DC related that LEEVER made it to Albuquerque, New Mexico but his Jeep broke down and could not complete the trip. DC then told your affiant and Det. Baker that LEEVER started to drive to Texas again on February 16, 2021. During that instance, DC was able to convince LEEVER to turn around and come back to Denver. DC believed that LEEVER made it as far south as Trinidad, Colorado. Your affiant reviewed the cell data records associated to LEEVER's cellular device and saw that on February 16, 2021, LEEVER received phone calls on his

cellular device, which connected with a cell tower south of Trinidad, CO.  It should be noted that it is less than 20 miles to the Colorado/ New Mexico state line from Trinidad, CO.



16. On March 22, 2021, your affiant sought additional clarification as to when and how SV knew LEEVER was travelling to Austin, Texas.  Your affiant was able to confirm that SV had received a phone call from LEEVER telling her that he was on his way to Austin, Texas.  LEEVER had previously called the person SV was living with in Austin, Texas.  LEEVER told SV's roommate that he knew where they lived, provided their address, and said he was going to kill everyone inside of the residence SV was staying at.  SV left Austin, TX on February 23, 2021, partly to get further away from LEEVER and for work.  SV also confirmed that LEEVER's mother had called her on February 12, 2021, to warn her that LEEVER was coming to Austin, TX to kill her.  This made SV afraid for her safety and caused her substantial emotional distress.  SV further related that when she found out LEEVER had bonded out of jail for a state case on March 4, 2021, she again went into hiding.

17. Many people interviewed as part of this investigation, including SV, stated that LEEVER suffers from mental illness.  SV described LEEVER as "manic bipolar and manic depressant."  SV believed that LEEVER had previously been medicated for this and was

prescribed Wellbutrin. SV stated that when LEEVER is off of his medication she had "walk on eggshells around him," and that he would act violently to anyone and resisted efforts to complete mental health treatment.

18. Your affiant believes that probable cause exists to arrest and charge Dustin Lee LEEVER with interstate stalking.

## CONCLUSION

Based on the aforementioned information, probable cause exists to believe that on or about February 12, 2021, in the State and District of Colorado, the defendant Dustin Lee LEEVER, did travel in interstate commerce, that is from Colorado to New Mexico, with the intent to kill, injure, harass, or intimidate his estranged intimate partner, and in the course of and as a result of such travel did place the estranged intimate partner in reasonable fear of death or serious bodily injury, and did cause, attempt to cause, or would be reasonably expected to cause substantial emotional distress to that person, in violation of 18 U.S.C. § 2261A(1)(A)(i) and (1)(B).

I, Ryan McKone, being duly sworn according to law, depose and say that the facts stated in this foregoing affidavit are true and correct to the best of my knowledge, information and belief.

*s/Ryan McKone*
Ryan McKone
ATF Special Agent

Sworn to before me this __8th__ day of April, 2021.

*Michael E. Hegarty*
HON. MICHAEL E. HEGARTY
United States Magistrate Judge
District of Colorado

**Application for arrest warrant was reviewed and is submitted by Celeste Rangel, Assistant United States Attorney.**

7